UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEW ENGLAND BOATWORKS, INC. and SHM NEB, LLC d/b/a SAFE HARBOR NEW ENGLAND BOATWORKS,<br>   Plaintiffs,<br><br>v.<br><br>AURORA, a 2008 67-foot Uniesse Marine SRL motor yacht (Official # 1209706), its engines, generators, electronics, tackle, tender, furnishings, contents, storage containers, bunkers, appurtenances, etc., in rem; YACHTING REVOLUTION, LTD., in personam; and MARC TRACHTENBERG, in personam,<br>   Defendants.<br><br>M&T BANK,<br>   Intervenor. | C.A. No. 20-189MSM |

**REPORT AND RECOMMENDATION
FOR ENTRY OF EXPEDITED ORDER OF REMOVAL AND OTHER RELIEF**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

  Following a court-annexed mediation over which I presided, this admiralty law case settled. The suit arose from disagreements regarding maritime supplies and service provided to, as well as the storage of, AURORA, a 2008 67-foot Uniesse Marine SRL motor yacht (Official # 1209706), *et al.* and its parts and contents (collectively, the "Vessel"). After it was filed, the Court issued an arrest warrant for the Vessel and appointed Defendant SHM NEB, LLC, as substitute custodian. ECF Nos. 7, 9. During the mediation, removal of the Vessel from

Plaintiffs' indoor storage facility was an essential and material term that was intensively negotiated with my assistance as mediator.[1]

To implement the agreement reached during the mediation, it is undisputed that the Parties – Plaintiffs New England Boatworks, Inc. and SHM NEB, LLC d/b/a Safe Harbor New England Boatworks (collectively, "Plaintiffs"); Defendants Vessel, Yachting Revolution, Ltd., and Marc Trachtenberg (collectively, "Defendants"); and Intervenor M&T Bank – entered into an integrated written Settlement Agreement that memorialized the terms of the settlement. ECF No. 60-1 ("Settlement Agreement"). In clear and unambiguous language, the Settlement Agreement includes the obligation of Defendants to remove the Vessel from Plaintiffs' premises: specifically, it requires that the Vessel must be removed by July 1, 2021, but permits Defendants an additional period of time under specified circumstances, with the crisp and clear mandate that "[i]n no event shall the Vessel remain at its current location beyond Wednesday, September 1, 2021." Settlement Agreement ¶¶ 1.8.2, 1.8.8 (emphasis added). As part of the Settlement Agreement, the parties requested, and the Court approved, that it would retain jurisdiction to enforce the Settlement Agreement "as may be necessary." ECF No. 59 at 2.

It is undisputed that the Settlement Agreement is an enforceable contract and that the Defendants have breached its unambiguous removal provisions. In their written response to the motion, Defendants did not deny the breach; instead, ignoring that they have already had more than two months of additional time from September 1, 2021, until the date of the Court's hearing (November 4, 2021), their opposition asked the Court to order Plaintiffs to allow them even more

---

[1] Because the mediation was confidential by Court rule and the Settlement Agreement itself mandates confidentiality, ¶ 1.34 (ECF No. 60-1 at 14), the Court will not reference any of what occurred during the mediation or the provisions of the Settlement Agreement except to the extent "necessary to this Court's determination of [this] motion[]." Abdullah v. Evolve Bank & Tr., No. CA 14-131 S, 2015 WL 4603229, at *2 n.5 (D.R.I. July 29, 2015) (to the extent necessary to determine motion to enforce and to avoid manifest injustice, pertinent aspects of confidential court-annexed mediation and settlement agreement are no longer protected).

time to remove the Vessel.² ECF No. 62.  Unrebutted are the declarations of Plaintiffs' general manager that the removal of the Vessel by September 1, 2017, was a "material term" of the Settlement Agreement.  ECF No. 60-1 at 1-2; ECF No. 63-1.  These declarations further establish that, even if Defendants were to pay in advance for continued storage (which they have offered to do), the continued storage of the Vessel will damage Plaintiffs through the loss of use of a portion of their essential and limited indoor storage facility, as well as the loss of a significant but difficult to calculate amount in service work.  Id.  As of the date of the hearing before me, the Vessel remained in Plaintiffs' storage facility, resulting in mounting losses for Plaintiffs, not only the ongoing cost of storage, but also the ongoing loss of work that cannot readily be compensated though money damages.  Id.

      Now pending before the Court is Plaintiffs' motion to enforce the removal term of the Settlement Agreement.  ECF No. 60.  The motion has been referred to me; because its determination involves findings of fact and an order to remove, which essentially amounts to an injunction, I am addressing the motion by report and recommendation.  28 U.S.C. § 636(b)(1)(B).  Because the motion asked for expedited treatment, I promptly held a hearing, during which I asked the parties to make post-hearing filings regarding precisely what remedy I should recommend.  In response, Plaintiffs filed a detailed proposed Order.  ECF No. 67 at 3-9.  In compliance with my directive, this proposal had been provided more than a day in advance of filing to both Defendants and the Intervenor.  As filed, the proposal incorporates comments from the Intervenor, which has no objection to the Court entering the proposed Order as filed by

---

² Instead of denying the breach, Defendants made what I find to be a feckless attempt to shift the blame for the breach to Plaintiffs.  That is, Mr. Trachtenberg averred to hearsay conversations with other boatyards, which he alleges declined to accept the Vessel because they had had "calls with NEB." ECF No. 62-1 ¶ 4.  Even if the Court were inclined to accept this hearsay as true (which I am not), the declaration also avers that these conversations occurred before the settlement; therefore, any such difficulty in finding a new boatyard was known to Mr. Trachtenberg and Defendants when they were negotiating the Settlement Agreement.

Plaintiffs. Defendants did not respond to Plaintiffs' proposed Order and have filed nothing in response. Therefore, as of this writing, the specific terms of Plaintiffs' proposed Order are unopposed.[3] ECF No. 67.

Having waited more than another full day followed the filing of Plaintiffs' proposed Order, during which time nothing was filed by Defendants, I make the recommendation below substantially based on Plaintiffs' proposed Order.

**I.      Applicable Law**

The Court has the power to summarily enforce a settlement agreement entered into by the litigants in circumstances presented here where "there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008); see Silva v. F/V Silver Fox LLC, 988 F. Supp. 2d 94, 97 (D. Mass 2013) (admiralty court has jurisdiction to summarily enforce settlement agreement). This is particularly true when, as here, the Court retained jurisdiction to enforce the terms of the settlement agreement. See generally F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1348 (S.D. Fla. 2007), aff'd, 308 F. App'x 389 (11th Cir. 2009); Alphas Co. v. Dean Tucker Farms Produce, Inc., Civil Action No. 12-10049-MBB, 2013 WL 1759011, at *8-9 (D. Mass. Apr. 23, 2013) (court may address motion to enforce settlement agreement by ordering specific performance if court expressly retained jurisdiction over settlement agreement).

When the underlying lawsuit relates to maritime service or maritime transactions, the Court's retained jurisdiction rests on federal admiralty law. See N. Pac. S.S. Co. v. Hall Bros.

---

[3] Defendants' pre-hearing brief argued that the portion of Plaintiffs' requested remedy related to the sale of the Vessel would contravene unspecified admiralty rules and amount to a taking. Based on their failure to avail themselves of the opportunity created by the Court's instructions to respond to Plaintiffs' proposed Order before it was filed, or to file their arguments in opposition to Plaintiffs' proposed Order on the record if agreement turned out to be impossible, I find that this totally undeveloped argument is waived.

Marine Ry. & Shipbuilding Co., 249 U.S. 119 (1919).  As to the interpretation of the Settlement Agreement itself, whether admiralty law or state law principles apply requires a complex analysis that it is not necessary in the circumstances of this case where the terms of the Settlement Agreement are clear and undisputed, as is the fact of Defendants' breach.  That is, whether admiralty law or state law principles are applied, the outcome is the same: the Court has the power to enter orders to summarily enforce a settlement when it has retained jurisdiction to do so.  See Puerto Rico Ports Auth. V. Umpierre-Solares, 456 F.3d 220, 227 (1st Cir. 2006) (in admiralty, specific performance of a maritime contract may be an appropriate remedy); T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 330 (D.R.I. 2013) (under Rhode Island law, specific performance of settlement agreement is appropriate when adequate compensation cannot be achieved through money damages and settlement term in issue involves control over unique item or facility, such as land).

At bottom, summary enforcement is appropriate because "[s]ettlement agreements enjoy great favor with the courts 'as a preferred alternative to costly, time-consuming litigation.'"  Fid. & Guar. Ins. Co., 541 F.3d at 5 (quoting Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987)).  The "solemnity with which the federal courts approach settlement agreements cannot be overstated." Abdullah, 2015 WL 4603229, at *5.

**II.      Recommended Order**

Based on the foregoing, I recommend that the Court order as follows:

1. This matter is reopened for the limited purpose of enforcing the Settlement Agreement.
2. An enforceable Settlement Agreement exists among the Parties.
3. Defendants have breached ¶ 1.8.8, the provision of the Settlement Agreement that required the removal from Plaintiffs' facility of the Vessel by September 1, 2021.

4. Defendants <u>shall</u> remove the Vessel from Plaintiffs' facility on or before midnight on Sunday, December 5, 2021[4]; unless written consent of Plaintiffs is filed on the docket, no extensions whatsoever shall be allowed.

5. Prior to the Vessel being removed from Plaintiffs' facility, Defendants shall pay storage charges to Plaintiff SHM NEB, LLC for the period from September 1, 2021, up to and including the day of the Vessel's removal at Plaintiff SHM NEB, LLC's standard rate of $128 per calendar day, as well as any other such charges as were agreed to in the Settlement Agreement (collectively "SHM Charges").

6. To the extent that Defendants fail to comply with the above Order to remove and pay for storage – that is, if the Vessel is not removed on or before Sunday, December 5, 2021, <u>and/or</u> if Defendants fail to pay the SHM Charges – the Court hereby finds that such contumacious conduct amounts to vexatiousness and bad faith by Defendants resulting in unnecessary delay and inflicting harm that is not adequately addressed by Defendants' payment of ongoing storage fees.

7. In that event, based on Defendants' bad faith breach and noncompliance with the Court's Order, the following shall occur:

   a. Plaintiffs shall promptly file with the Court notice of Defendants having acted in bad faith.

   b. Plaintiffs may promptly move the Vessel from its current inside storage location to a location outside at Plaintiffs' facility.

   c. Plaintiffs shall shrink-wrap the Vessel upon it being re-located outside but shall have no further obligation to do, or liability with respect to, anything for the Vessel.

---

[4] This date is thirty days following the Court's hearing. As I advised the parties, it is set as a fixed date. If the Court adopts my recommendation, I specifically recommend that the Court retain this date as the deadline for removal of the Vessel.

d.     Plaintiffs shall thereafter file in this matter a motion seeking issuance of an Arrest Warrant under such theories as it believes support issuance of the same along with a motion seeking to appoint SHM NEB, LLC as the substitute custodian all to be copied to the U.S. Marshal for the District of Rhode Island ("U.S. Marshal"). This motion shall be marked as "Expedited" and treated in accord with D.R.I. LR Cv 9.

e.     By reason of Defendants' vexatiousness and bad faith and to avoid further unnecessary delay, they shall not be allowed to file a response in objection to Plaintiffs' motion seeking issuance of an Arrest Warrant except in the event of extraordinary and unanticipated circumstances.

f.     Upon the issuance of an Arrest Warrant and Appointment of a Substitute Custodian and its execution by the U.S. Marshal, and except as otherwise stated herein, Plaintiffs shall be relieved of any publication requirement imposed by the Federal and/or Local Rules of Civil Procedure by reason of this Vessel having previously been arrested and seized and not having since moved from its current location and all notices shall be directed to the attorneys who have entered an appearance in this matter and have not otherwise withdrawn.

g.     Within forty-five days following the U.S. Marshal having executed the Arrest Warrant by arresting and seizing the Vessel, the U.S. Marshal shall hold an auction of the Vessel.

h.     Prior to the Vessel's auction, Plaintiffs shall publish notice of the Vessel's auction in accord with D.R.I. LAR E(10).

i.     Prior to the Vessel's auction, Substitute Custodian SHM NEB, LLC may allow prospective bidders to board the Vessel for the limited purpose of non-destructive inspection as part of deciding whether or not to bid without further Order of this Court. Anyone boarding the Vessel shall first sign SHM NEB, LLC's standard Release and Waiver pertaining to injury or loss sustained during the inspection. No inspection shall last longer than thirty minutes.

j.     The Vessel's auction shall be conducted in accord with D.R.I. LAR E(10) and shall include as a condition of bid that the high bidder remove the Vessel from its current location within thirty calendar days of the auction, or, in the alternative, on a date agreed to in writing by Plaintiffs to be filed on the docket.

k.     If Intervenor M&T Bank intends to credit bid at the Vessel's auction, it shall file on the docket a motion seeking to credit bid within five calendar days following the issuance of the Arrest Warrant. This motion shall be marked as "Expedited" and treated in accord with D.R.I. LR Cv 9. In lieu of motion practice, M&T Bank may credit-bid upon the filing of a Stipulation between it and Plaintiffs in which agreement is made allowing M&T Bank to credit-bid and identifying the amount of the credit-bid.

    l.    Plaintiffs may credit bid at the auction without the necessity of motion practice provided their storage charges are supported by affidavit.

    m.    By reason of Defendants' bad faith, neither they nor any representative, agent and/or family member shall be allowed to bid at the Vessel's auction.

    n.    Following confirmation of the Vessel's sale at auction, distribution of the proceeds from the Vessel's auction shall occur following the receipt of briefs from any parties or non-parties who should make claim to an interest in the sales proceeds as to their alleged respective interests and claim of liens/mortgages and such hearing(s) as this Court deems necessary to adjudicate distribution of these funds.

    o.    Notwithstanding paragraph "n" and as a priority to be paid before any other claimant, the Substitute Custodian shall be paid for all of its fees and expenses from the sales proceeds upon presentment of proof of the same which can be made in the form of an affidavit.

    p.    Notwithstanding paragraph "n" and as a priority to be paid before any other claimant, all storage charges as may be owing for the period up to when the Vessel is arrested and seized shall be paid to Plaintiffs from the sales proceeds upon presentment of proof of the same which can be made in the form of an affidavit.

    q.    The high-bidder at the auction (including a credit-bidder), shall promptly pay all of Plaintiffs' storage charges including charges until the Vessel is removed and it shall promptly pay Plaintiffs all the expenses of the arrest and seizure including the costs to relocate and shrink-wrap the Vessel.

8. By reason of Defendants' vexatious and bad faith conduct resulting in delaying the consummation of this unambiguous settlement agreement, Abdullah, 2015 WL 4603229, at *5, Plaintiffs and M&T Bank are entitled to an award of their attorneys' fees and costs caused by the bad faith conduct.

    a.    No later than 30 calendar days following the Vessel's auction, Plaintiffs and M&T Bank shall, if they elect to do so, file their motions seeking an award of attorneys' fees and costs with such application to be supported in the manner set forth at D.R.I. LR Cv 54.1(b).

9. No later than sixty calendar days following the Vessel's auction, Plaintiffs shall file a status report or a Stipulation of Dismissal.

10. Any disputes or questions which arise and are not addressed herein, shall be promptly brought to the Court's attention by emailing Case Manager Martha Saucier at Martha_Saucier@RID.USCOURTS.GOV and requesting a telephone conference with the Court.

### III. Conclusion

Based on the foregoing and mindful of the lack of factual dispute or legal argument to the contrary, I recommend that Plaintiff's motion to enforce (ECF No. 60) be granted and that the Court enter the Order set forth above.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 10, 2021